[Crim. No. 36604. Second Dist., Div. Three. June 24, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
EDWARD LEE McCLELLAN, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Steven M. Cron and Dean R. Gits, Deputy Public Defenders, for Defendant and Respondent.

OPINION

COBEY, Acting P. J.—Respondent, Edward McClellan, was found guilty by a judge, sitting without a jury, of selling phencyclidine (PCP) in violation of Health and Safety Code section 11379.5. At the sentencing hearing, however, prior to sentence, the trial judge denied a motion for new trial, but granted a motion pursuant to Penal Code section 1181, subdivision 6,[1] to reduce the offense to simple possession in violation of Health and Safety Code section 11377. Appellant, the People of the State of California, appeals from this order. The appeal lies. (See Pen. Code, § 1238, subd. (a)(6).)

Appellant contends that the trial court exceeded its jurisdiction in its attempt to reduce the offense to simple possession because the evidence supports a judgment of conviction of the greater offense charged. We agree with appellant that the trial judge acted in excess of his jurisdiction. Therefore, for the reasons stated below, we intend to vacate the order under appeal and remand the case to the trial court for the resentencing of respondent.

---

[1]The judge orally misstated the section number as 1181, subdivision (c). There is no such subdivision and the record clearly indicates that the judge intended subdivision 6.

## FACTS

On May 21, 1979, an undercover police officer, David L. Parham, went to Jeanette Morgan's apartment. He knocked on the door and asked for a woman named "Brenda,"[2] who was not there. Respondent, Morgan and Lisà Keno (Morgan's house guest) were present in the apartment. After being informed that Brenda was not there, the officer asked if anyone knew where he could get a "Sherman." A Sherman is a cigarette which has been dipped in or sprayed with PCP. Respondent, who lived in an apartment downstairs, indicated that he thought that he could find one. Parham asked respondent what the going price of the contraband was and gave respondent some money. Respondent then left the apartment.[3]

Respondent returned after about 30 minutes with a brown cigarette wrapped in foil which he gave to Parham. This cigarette was later determined to contain PCP. Parham stayed at the apartment for another 20 minutes. Respondent testified that he got the Sherman for Parham because he thought Parham was the boyfriend of his ex-girl friend's sister and he knew Parham would not be able to get the Sherman for himself because Parham was new in the neighborhood.[4]

On June 11, 1979, respondent was arrested in his own apartment. Respondent waived his right to a jury. At the conclusion of the presentation of evidence and a brief argument by defense counsel urging the defense of entrapment, the court found respondent guilty.

At the sentencing hearing respondent made motions for a new trial and a reduction of the charge to simple possession, a misdemeanor. The judge granted the motion to reduce the offense, stating:

"THE COURT: He didn't have any [PCP] anywhere. He went and got it. I am convinced that that is true. I am convinced that that is what

---

[2]There was defense testimony that Parham asked for "Barbara," Morgan's apparent roommate, and entered the apartment to wait for her.

[3]The officer testified, contrary to respondent, that respondent indicated that he himself had whole Shermans to sell for $15 and halves for $7.50. The officer testified that he asked for a whole and that respondent left for 10 minutes and returned with a Sherman, for which the officer then paid him $15. The trial judge, however, expressly stated that he was "convinced" that respondent "knew where to get the PCP, but he didn't have any himself."

[4]Parham's testimony implied that, while he knew Brenda, he was not very familiar with respondent. Parham did not know respondent's name or where he lived. According to Parham, before May 21, he apparently had not been to the apartment. Respondent testified to the contrary.

happened, that he knew where to get the PCP, but he didn't have any himself.

"Now on a scale of seriousness of criminality and on a scale of common sense and reasonableness, that, frankly, makes him less culpable than the individual who, although not in fact caught in a sale, is, nevertheless, standing out on the corner with a jar of juice and some cigarettes. It also makes him substantially less culpable than the individual who has no juice, but has got three or four Shermans wrapped in foil in his jar in his pocket, and also makes one wonder as to his culpability as compared with one who is simply in possession for personal use.

"Mr. McClellan has never been convicted of possession of PCP. I think Mr. McClellan is a man who has very, very long contact with, and possibly pretty good respect for marijuana, and his record certainly indicates that, and I would imagine that given his circumstances in life, that he is very knowledgeable about the neighborhood in which he lives and where and how drugs and narcotics can be obtained. I imagine he probably also knows where you can place bets and buy guns or whatever else, although I don't think he is a man who, himself, is going to go out and hold up any liquor store or get involved in anything of any seriousness.

"I think that in this particular situation that the interest of justice would be served by a reduction, and I am going to grant the motion under Section 1181, Subdivision (c) [*sic*] of the Penal Code and find that the defendant is guilty of a lesser and necessarily included offense than that charged, namely possession of PCP, in violation of Section 11377 of the Health and Safety Code." Respondent was then sentenced to nine months in the county jail. He was given three days' credit.

### DISCUSSION

In ruling on a motion for a new trial based on the assertion that the verdict is contrary to the law or evidence, the trial judge must independently reweigh the evidence. The trial judge's determination will not be overturned absent a clear abuse of discretion. (See *People v. Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289]; *People v. Borchers* (1958) 50 Cal.2d 321, 328, 330 [325 P.2d 97]; *People v. Marchialette* (1975) 45 Cal.App.3d 974, 983 [119 Cal.Rptr. 816].) A

grant of a motion for new trial on such basis is not an acquittal and does not bar retrial. (See *People* v. *Serrato, supra*, 9 Cal.3d at p. 761.)

■ If "the evidence shows the defendant to be *not guilty* of the degree of the crime of which he was convicted, but guilty of...a lesser crime included therein," the trial judge may modify the verdict to reflect a finding of guilt as to the lesser included offense instead of granting a new trial. (Italics added.) (Pen. Code, § 1181, subd. 6.) The purpose of Penal Code section 1181, subdivision 6, is to obviate the necessity of a new trial where the court believes there is sufficient evidence to establish the lesser offense but not the greater. (See *People* v. *Serrato, supra*, 9 Cal.3d at p. 761.)

■ In this case, the trial judge reduced the charge to a lesser included offense but denied the motion for new trial. The judge, however, expressly stated that respondent had committed the greater offense charged. The evidence that respondent sold a Sherman to Parham was unrefuted. Respondent admitted the sale, but asserted the defense of entrapment.

■ The defense of entrapment is designed to discourage improper police conduct by prohibiting the conviction of an individual of a crime, the commission of which was induced by law enforcement officials. The test of entrapment is whether the conduct of the law enforcement agent was likely to induce a normally law-abiding person to commit the crime. (See *People* v. *Barraza* (1979) 23 Cal.3d 675, 688-690 [153 Cal.Rptr. 459, 591 P.2d 947].)

In the application of this test it must be presumed that a person would normally resist a simple opportunity to commit a crime. Only undue pressure from law enforcement officials is proscribed. The police must neither generate a motive for the crime other than criminal intent —e.g., friendship or sympathy rather than personal gain—nor make the crime appear unusually attractive. (See *id.* at p. 690.)

Furthermore, the conduct of the law enforcement officials must be considered in light of the surrounding circumstances. Circumstances to be considered are the transactions preceding the offense, the suspect's response to the officer's inducements, the gravity of the crime and the difficulty in detecting other instances of the crime. (See *ibid.*)

At the time of trial, the trial judge expressly rejected this defense. The judge apparently rejected the assertion that respondent was motivated by friendship. Furthermore, the judge apparently believed that respondent readily yielded when the opportunity to commit the crime presented itself.[5]

Respondent suggests that the trial judge's reduction of the conviction to that of simple possession was based upon the judge's finding of a partial defense of entrapment. Respondent argues that the judge believed that at least the sale was induced by "friendship" or some motive "other than ordinary criminal intent."

We disagree. The trial judge expressly found that respondent did not possess any Shermans prior to the police officer's request for one. The judge stated that he was convinced that respondent merely knew where to get the contraband and did so only after the officer's request. As mentioned above, however, the trial judge apparently did not believe that the officer's conduct was such that it would induce a normally law-abiding citizen to commit the crime. While there may be some evidence to support a finding of entrapment, it was contradicted and was not so compelling that the trial judge as the trier of fact could not reject it. (See *People v. Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds, *People v. Flannel* (1979) 25 Cal.3d 668, 685 [160 Cal.Rptr. 84, 603 P.2d 1].) This rejection was not an abuse of discretion. Since both the possession and the sale occurred only because of Parham's request, which the trial judge found did not constitute entrapment, the defense is not available as to any part of the crime.

The trial court was apparently trying to do justice by being lenient to respondent because of his comparatively slight culpability. But the judge was without power to do so in the manner he chose. Once a defendant's guilt has been established by a fair trial, the trial judge's power is limited to the pronouncement of sentence. Such pronouncement is limited to the alternatives outlined by the Legislature in the sentencing statutes. (Cf. *People v. Municipal Court (Gelardi)* (1978)

---

[5]During sentencing the trial judge stated: "THE COURT: Well, Mr. McClellan, I don't know that I would be in favor of you doing much counseling. I mean, now here is a situation where the officer simply walks in. You don't know him from the man in the moon. He walks in and says he wants to buy a Sherm, and you just go and get him one."

84 Cal.App.3d 692, 699 [149 Cal.Rptr. 30]; *People* v. *Superior Court* (*Montano*) (1972) 26 Cal.App.3d 668, 671 [102 Cal.Rptr. 925].)

Under the circumstances, the reduction of the crime in furtherance of justice was in excess of the trial court's authority and constituted "an unauthorized leniency." (Cf. *People* v. *Serrato, supra,* 9 Cal.3d at p. 762.) Therefore, the order after judgment must be vacated, and the case remanded to the trial court for resentencing.[6] (See *People* v. *Wilson, supra,* 271 Cal.App.2d at p. 64.)

An order modifying a verdict to a lesser included offense which ripens to a final judgment bars further prosecution on the greater offense. (See *People* v. *Serrato, supra,* 9 Cal.3d at pp. 761-762.) The order under appeal here, however, never ripened into a final judgment. Furthermore, because it was in excess of the court's jurisdiction it is void and must be vacated. (See *People* v. *Wilson, supra,* 271 Cal.App. 2d at p. 64.) Additionally, since the trial court, as the sole trier of fact, found respondent guilty and at no time found the evidence to be inadequate to support a judgment of conviction, his order reducing the verdict to the lesser offense can in no way be deemed an acquittal of the greater offense.[7]

## DISPOSITION

The order under appeal is vacated and the case remanded for the resentencing of respondent.

Allport, J., and Potter, J., concurred.

---

[6]Normally, where such an order has been set aside the case would be remanded for a hearing on the motion for new trial. In this case, however, the record demonstrates that the trial judge considered the motion for new trial and denied it on its merits. Therefore, the motion need not be reconsidered on remand. (Compare *id.* at p. 765; *People* v. *Wilson* (1969) 271 Cal.App.2d 60, 64-65 [76 Cal.Rptr. 195].)

[7]We note that upon resentence, respondent is entitled to credit for all time he has spent in custody pursuant to the invalid sentence. (See *People* v. *Serrato, supra,* 9 Cal. 3d at p. 764, fn. 11.)